SEWELL N. FARWELL, Appellant, v. H. M. CARPENTER,
Appellee.

**Wills:** CONSTRUCTION: AGREEMENT TO WAIVE PROBATE: EFFECT. By
1 the will involved one fifth of testator's estate was bequeathed in
trust to the executor for the support of a son during his life, and
after his death to his lineal descendents, if any. The testator also
made a deed to his property, with a memorandum suggesting that it
would· avoid the necessity of probating the will if the legatees
·should so agree, and suggesting that the executor act as trustee for
the son under a power of attorney. Upon testators death his children
made an agreement that the·will should not be probated, and that
the executor should distribute the personal estate as provided in
the will. The son to whom the bequest in trust was made also
executed an instrument in which he approved the provisions of the
will and requested that the executor act as his trustee, and to enable
the trustee to carry out the will he executed a power of attorney
authorizing the executor to exercise full control over his property.
*Held,* that the effect of these instruments was not to supersede and
render the will a nullity and thus remove the limitations upon the
son's ownership of his share in the estate, but were for the purpose
of carrying out the provisions of the will without its probate, and
that the son could not revoke the power of attorney and recover
possession of the trust fund; especially as no agreement among the
children could affect the rights of contingent remaindermen.

**Same.** It is competent for the parties in interest to waive the probate
2 of a will and to bind themselves to abide by its provisions; and by
such an agreement they are estopped to deny the probate, or to
insist upon the invalidity of the will for want of probate. It is also
the rule that an agreement not to contest a will is binding upon the
parties thereto; also that those parties in interest may waive admin-
istration and divide the estate by mutual agreement.

**Same.** Where the testator left a portion of his estate in trust for a
3 son, and also made a deed of his real property to a daughter, with
the suggestion that the deed would dispense with the probate of
the will, the consideration for the deed being that the grantee should
pay to each of the other children a certain sum, and the other
children who took an interest in the real property under the will
agreed that the personal estate should be distributed without pro-

bating the will, and also addressed a writing to the grantee in the deed in which they stated that it was the fathers wish during the last few months of his life that she should have the property conveyed absolutely and without making any payment to other children; *Held,* that the latter writing did not have the effect of setting aside the will, thus abrogating the trust and giving to the son unlimited control of his interest in the estate, but merely waived the provisions in favor of the parties executing it.

LADD, J., dissenting.

*Appeal from Jones District Court.*—HON. F. O. ELLISON, Judge.

WEDNESDAY, JULY 2, 1913.

SUIT in equity for an accounting against the defendant, as trustee, under power of attorney. It was averred in the petition that the power of attorney had been revoked. The prayer was that the defendant be required to account and to deliver to the plaintiff all property received by him in pursuance of such power of attorney. The defendant by his answer admitted that he held the property referred to as trustee and rendered a full accounting thereof. He denied the right of the plaintiff to the possession of the property and denied his right to revoke the power of attorney. Other features of the issue will be stated in the body of the opinion. There was a decree dismissing the petition, and the plaintiff appeals.— *Affirmed.*

*E. E. Reed, Remley & Remley,* and *C. J. Kissinger,* for appellant.

*Herrick, Cash & Rhinehart,* for appellee.

EVANS, J.—There is no substantial dispute of fact between the parties. The accounting rendered by the defendant in his pleading was accepted by the plaintiff as correct. The controversy between the parties arises over the construc-

tion which should be put upon certain written instruments entered into on September 24, 1909, one of which was the power of attorney referred to. These instruments were all pleaded by the plaintiff in his petition as constituting a contract. The question involved is whether the plaintiff is the absolute owner of the certain property held by the defendant as trustee or whether he is entitled only to the use and income thereof during his life.

The question arises out of the following facts: The property involved is a one-fifth share of the estate of Sewall S. Farwell, the father of the plaintiff who died testate September 21, 1909, leaving as his only heirs five adult children, of whom the plaintiff was one. This will was executed in April, 1899. Two codicils were attached thereto in 1903 and 1908, respectively. Under the provisions of such will, one-fifth of the estate was set apart to the use of the plaintiff during life, and the defendant was appointed as trustee. In lieu of filing such will with the clerk after the death of the testator and offering the same for probate, the existing beneficiaries entered into certain written agreements dispensing with such probate. These are the instruments which are before us for construction. The provisions of the will in favor of the plaintiff were as follows:

1. WILLS: construction: agreement to waive probate: effect.

The remaining one-fifth (⅕) of my estate I direct shall be placed in the hands of a trustee and so invested as to produce an income, and that so much of this income as shall be needed shall be used for the comfort and support of my son, Sewall N. Farwell, to be paid to him in weekly or monthly installments, as I have sorrowfully come to the conclusion that he will never have the capacity to take care of property and earn his own living. Should he marry and have lineal issue I direct that upon his death this one-fifth of my estate with its accretions, if any, shall become the property of the said lineal issue of Sewall N. Farwell subject to all the safeguards which the law affords. In case of the death of Sewall N. Farwell without having lineal issue, I direct that the one-fifth of my

estate set apart for his use shall be divided as provided in the provisions of this will for the four-fifths of my estate, and is bequeathed to my other children and their lineal descendants. I hereby appoint Henry M. Carpenter executor of this will and trustee of that portion of the estate allotted to the use of Sewall N. Farwell and request that no bonds be required of him for the faithful performance of his duties.

In May, 1908, the testator wrote the following memorandum and placed the same with his private papers, where it was found after his death: "May 1st, 1908. I have made the accompanying deed with the view that if my death should occur while my property is in its present condition there being no other real estate, that if all parties are agreed and will consent to the same there will be no necessity of having my will probated. I think Sewall would consent to have Henry act for him as trustee with power of attorney, and I see no other complications in the way."

In January, 1909, he wrote the following letter to the plaintiff, who then resided in another state: "Monticello, Iowa, Jan. 7, 1909. My Dear Sewall: You know I am far from well and my physical infirmities admonish me that I have a frail hold upon life. When I pass away there will be some property for the children and I have made Henry executor of my will and I hope you will leave it entirely in his hands, as he will be able to do better with it than you can possibly do for yourself. Affectionately, S. S. Farwell."

On September 24, 1904, the existing beneficiaries (being two sons and three daughters) executed a written agreement, the material part of which was as follows:

Exhibit B: Monticello, Iowa, September 24, 1909. Whereas, Sewall S. Farwell, who departed this life on September 21, 1909, left a last will bearing date of April 5th, 1899, by the terms of which his estate was to be equally divided among all his five children (that is, one-fifth each to Mary F. Carpenter, Luna F. Templeton, Marcus Z. Farwell, Zelma F. Smith and Sewall N. Farwell, the share of said Sewall N. Farwell to be held by H. M. Carpenter as trustee); and whereas,

said Sewall S. Farwell under date of May 1, 1908, made a written statement and request that, 'If all parties are agreed and will consent to the same, there will be no necessity of having my will probated,' and we are confident that no debts, other than expenses connected with last sickness and funeral, are in existence against said Sewall S. Farwell; and whereas, all of said five heirs fully approve of and agree to said request not to have said will probated, believing that it will expedite the settlement of the estate of said Sewell S. Farwell and in every way be to the best interests of all concerned; Now, therefore, it is hereby agreed by and between all of said five heirs, together with the husbands of the three daughters who are married, and the wife of the said Marcus Z. Farwell (said Sewall N. Farwell being unmarried), that said will be not probated, but that as promptly as possible and within a reasonable time Henry M. Carpenter, named in said will as executor, do make distribution of said estate as said will provides; that is, one-fifth to each one of said five children. Said Carpenter is to at once make distribution of the two hundred seven shares of Monticello State Bank stock held by said Sewall S. Farwell by taking up the stock certificate now held by his estate and issuing to each of said five heirs their proportionate share thereof (that is, to each of said five heirs forty-one shares), which would leave two shares still remaining in said estate. These two shares are to be disposed of as soon as practical by said Carpenter at not less than three hundred dollars per share, and the proceeds thereof credited in said Farwell estate for distribution among the five heirs with other accumulations that may come to said estate by maturing certificates or payments on outstanding securities. Mary F. Carpenter, Luna F. Templeton, Marcus Z. Farwell, Zelma F. Smith, Sewall N. Farwell, H. M. Carpenter, Edw. Templeton, Elizabeth C. Farwell, Wm. Skelton A. Smith.

The foregoing beneficiaries, other than the plaintiff, were married, and the above names include the husbands of the daughters and the wife of the married son. On the same day the plaintiff executed the following:

Monticello, Iowa, September 24th, 1909. Whereas, the will of my father, Sewall S. Farwell, late deceased, had the following provision, especially referring to my share in his

estate, (that is, 'The remaining one-fifth of my estate I direct shall be placed in the hands of a trustee and so invested as to produce an income, and that so much of this income as shall be needed shall be used for the comfort and support of my son, Sewall N. Farwell, to be paid to him in weekly or monthly installments, as I have sorrowfully come to the conclusion that he will never have the capacity to take care of property and earn his own living'), and whereas, said will further provided that Henry M. Carpenter be appointed as the executor and also as trustee of that portion of the estate allotted to my use; and whereas, my said father left with his will a memoranda, under date of May 1, 1908, in which he stated that if practicable it would be his wish to have his estate settled without formal probate of his will, and also stated in said memoranda, 'I think Sewall would consent to have Henry act for him as trustee with power of attorney'; I fully approve of the provisions of the said will with reference to myself and also the request in the memoranda of May 1, 1908, referred to, and now ask and desire that said Henry M. Carpenter do act as trustee for my share of said estate, distributing such portion of the income of my share to me from time to time as my necessities require. To further enable said Henry M. Carpenter to carry out the provisions of said will with reference to myself, and to better enable him to transact any business in connection with said trusteeship, I have this day executed in his favor my power of attorney fully authorizing and empowering him to do all things with my property that I could myself do. It is understood by me that said Carpenter is to make reports to me at reasonable periods showing the condition of the property he holds for me as trustee. Sewall N. Farwell.

At the same time he executed a separate and formal power of attorney. This is the power of attorney which he afterwards purported to revoke.

The contention of appellant is that the effect of the foregoing written agreements was to supersede the will and to render it nugatory. He contends further that the limitations contained therein upon his ownership of the one-fifth share of the estate were thereby eliminated and that he took his title under the written agreements and as an heir of his father

in the same manner that he would have done if his father had died intestate. The argument is that the will of the testator could have no force or effect until probated, and that, inasmuch as the probate thereof was dispensed with by the agreement of the parties, the force and effect of the will was thereby destroyed. It is further contended that the agreements referred to should be read and construed according to their own strict terms, and that no reference whatever should be had to the terms of the will for the purpose of placing a construction upon the language of such instruments. To put it in another way briefly, the contention is that the necessary effect of the written agreements was to set aside the will regardless of other legal cause therefor.

On the other hand, it is the contention of appellee that the written instruments referred to were entered into, not in hostility to the will, but in obedience thereto, and that the manifest purpose and purport thereof was to fulfill the provisions of the will voluntarily and without the aid or compulsion of judicial proceedings, and that the provisions of the will therefore necessarily became a part of such instruments. Both parties concede that the written memorandum of request by the testator furnished the suggestion for the course pursued. On the part of appellant, however, it is contended that this request on the part of the testator was a revocation of his will, subject, perhaps, to the written consent of his children. While the appellee contends that such written request contemplated a voluntary execution of the provisions of the will without the formality of probate. We are clear that the contention of appellee must be sustained. The instruments signed by the parties specifically recognized the provisions of the will and the validity thereof. The legal validity of the will was not questioned then nor is it questioned now. No fraud or incapacity is charged in the execution of the subsequent instruments. The parties could not set aside such will by mere agreement, if they would. They could by such agreement bind and estop themselves. They could thereby

determine their own relative rights, regardless of probate. They could not thereby extinguish the rights of other beneficiaries of the will, nor indeed could they prevent subsequent probate of the will by other interested parties as proponents thereof. In the will before us there were other legatees whose rights were recognized by the agreement of the heirs; provision being made for the payment of such legacies. The effect of the will was to create a future contingent interest in the lineal descendants of the plaintiff, if any he should have. Such provision of the will could not be affected by the agreements under consideration. The necessary result is that the defendant is bound as trustee, not only for the plaintiff, but also for his future children as remaindermen, if any he should have. This of itself is sufficient reason why the court should refuse to award to the plaintiff the possession of the body of the estate involved.

We think, therefore, that the only fair construction which can be put upon the written instruments of the parties is that they were intended to be in harmony with the will and to carry out the provisions of the will as far as it was in their power to do so as the only beneficiaries now in existence. The nature of the title to the trust estate is not dissimilar in its main aspects to that involved in *Birdsall v. Birdsall,* 157 Iowa, 363.

That the parties in interest may, as between themselves, waive the probate of a will and bind themselves to abide by its provisions we have no doubt. It was so expressly held in *Darden v. Harrill,* 78 Tenn. 421. But the

2. SAME.          parties to such agreement become thereby estopped to deny the probate of the will or to insist upon the invalidity of the will for want of probate. *Darden v. Harrill, supra.* See, also, *Walworth v. Abel,* 52 Pa. 370. It has also been held that an agreement not to contest a will is binding upon the parties thereto. *Jones v. Jenner,* 14 N. Y. St. Rep. 376; *Reichard v. Izer,* 95 Md. 451 (52 Atl. 592). We have had occasion to hold that the parties in interest may by agreement waive administration and divide an intestate estate by

mutual agreement. *Christie v. C., R. I. & P. Ry. Co.,* 104 Iowa, 707. We think, therefore, that the instruments in question should be read in the light of the provisions of the will and that they will bear no other fair construction than that they were intended to carry out the provisions of the will without the formality of probate. If we are correct in this view, then the execution of a formal power of attorney by plaintiff to defendant was simply part of one contract and was permeated with the same consideration which entered into every other part thereof. If this be so, it was not subject to revocation. Manifestly no agreement could have been reached by the parties unless the plaintiff had agreed to such a power of attorney. This was essential to the formal creation of the trust, in the absence of the probate of the will. The plaintiff did agree to it, and such agreement became a part of the mutual consideration of the agreement as a whole. To revoke afterwards the power of attorney would be to repudiate the entire contract. He had no more right to do the one than the other. Consistent with this view is the fact that the formal power of attorney was drawn upon a printed blank form. The printed form contained the following clause: "Reserving the right to revoke this power at pleasure." This clause was canceled by drawing lines through the same with pen and ink.

There is a suggestion in the argument of his counsel that he was in some way misled or overreached. The petition tenders no issue of that kind; nor was there any evidence directed to the support of such a suggestion, and we must therefore wholly disregard it.

II. There is another feature of the record which is pressed upon our attention in appellant's argument. On the same day and at about the same time that the execution of the foregoing instruments was had, another instrument or paper was signed by all the interested parties, except the Templetons, to whom it was delivered and by whom it was accepted. The same was as follows:

3. SAME.

Monticello, Iowa, Sept. 24, 1909. Luna F. Templeton and Edward Templeton, City—Dear Sister and Brother: Referring to a deed executed by Sewall S. Farwell, under date of May 1, 1908, conveying to Luna F. Templeton property in Monticello, known as the Farwell home, and the memoranda left with said deed under same date, wherein your father apparently indicated his intention that in consideration of the delivery of said deed you pay to each of the other heirs the sum of five hundred dollars each, we wish to say and formally give expression to the thought that we thoroughly and unqualifiedly believe that it was the full intention of said Sewall S. Farwell, our father, for the last three months or more of his life, to convey said home property to you without charge or payment of any sum whatever. We further believe that had it not been for the very serious illness and partial incapacity of body and mind of our said father during the last three months or more, he would have conveyed said property to you outright and without any reservations or provisions. We all of us distinctly recognize the great service you have rendered Father Farwell in providing him with a home for these many years, and giving to him the loving care and comforts of a home that he could not otherwise well have had. It is justly and equitably your due, and we emphatically insist that you have, without payment of anything whatsoever, said home property conveyed by said deed, together with all of the furniture and other property of said Farwell therein, excepting some books, papers, and relics, otherwise disposed of by will.

The instrument carries its own explanation. It was a waiver by the signing parties of all claim upon Mrs. Templeton under the provisions of a codicil of the will in their favor. It is not claimed by appellant that this agreement was invalid as against the parties thereto. On the contrary, it is contended that it was and is valid in that it was a part of the consideration of the one transaction between the parties. It is urged, however, by way of argument that this instrument dispenses with or waives certain provisions of the will, and to this extent indicated an intent to set aside the will. It is further argued that, if the appellant has only a life use of the share of the estate which was set apart for his

benefit, then he had no power to dispose of the contingent remainder of the estate. The power of the appellant to waive whatever interest he had in such provisions of the codicil was no less than that of the other signing parties. And this is so even though there should be an outstanding contingent interest in future children. The agreement purports to bind no one except the parties thereto. It purports to be executed for a separate and meritorious consideration. We have no occasion to pass upon the rights of future beneficiaries. All that is claimed for this feature of the record is that it is inconsistent with appellee's theory of the case. We think, however, that the argument at this point is quite met by the recitals of fact contained in this instrument.

We think that the trial court reached a correct conclusion, and its decree is therefore *Affirmed.*

LADD, J., dissents.